### TECHE LINES, Inc., v. BOYETTE.
#### No. 9399.

Circuit Court of Appeals, Fifth Circuit.
May 10, 1940.

Rehearing Denied June 11, 1940.

SIBLEY, Circuit Judge, dissenting.

Hugh V. Wall, of Brookhaven, Miss., for appellant.

Earl Brewer and William H. Hewitt, both of Jackson, Miss., and M. S. McNeil, of Hazlehurst, Miss., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The appellee secured a jury verdict in an action for damages for personal injuries sustained by her while a passenger on a bus owned and operated by appellant. The latter argues that it should have been granted the peremptory instruction requested, because (1) there was no negligence shown and (2) the verdict was contrary to the overwhelming weight of the evidence.

The accident complained of occurred in Mississippi, about 2 o'clock in the afternoon of a clear day, on a concrete highway between Jackson and Wesson. Appellee testified that she was sitting in the bus on its right front seat; that the bus was travelling over 60 miles an hour at all times; that, at the time of the accident, the driver had increased the speed to 70 or 75 miles per hour in order to reach a bridge in advance of a car approaching from the opposite direction. She was apprehensive of the danger, and braced herself, but the bus successfully cleared the bridge; whereupon the driver turned to the passenger behind him and made a remark "sounding like, 'well, we beat 'em.'" As he turned, he pulled the bus to the left and into the middle or left side of the road, where it collided head-on with a small automobile approaching from the other direction. The right front of the bus struck the right front of the little car, and the impact was so severe that appellee was thrown 90 feet through the air.

It was appellee's theory that the little car pulled to its left in an effort to avoid the bus, whereas appellant's testimony was that the bus was on the right side and the little car pulled over so suddenly that the accident was caused thereby, and could not have been avoided by the driver of the bus. Appellant introduced, as witnesses, six passengers on the bus who contradicted the appellee as to the speed at which the bus was being operated and the side of the road on which it was travelling. Two witnesses testified that the bus was equipped with a governor limiting its speed to 50 miles per hour, and one of them stated that the bus could be stopped within 30 feet, at 30 miles per hour, and within 65 to 70 feet, at 60 miles per hour. Several testified that the accident occurred just as the bus came off the bridge. This testimony was corroborated in part by two witnesses who observed the accident from a distance of a quarter of a mile. The physical facts, which are undisputed, show that two black marks, apparently caused by the application of the brakes of the bus, ran down the highway from the bridge a distance of 150 feet, then angled across the road, at which point a deposit of mud, dust, glass, and debris was found. The bus finally stopped off the left side of the road 280 feet from the bridge, and the small car stopped 202½ feet from the bridge on the opposite side.

With the evidence in this state of conflict, appellant argues that the uncorroborated testimony of the appellee cannot stand alone against the overwhelming evidence of ten disinterested witnesses, and that her testimony was therefore unbelievable. We cannot agree. Appellee's general reputation for truth and veracity was not impeached; her seat in the bus afforded her the best view of the happenings; her testimony of the excessive speed was corroborated by the distance she was hurled through the air, by the distance the bus traveled with the brakes locked, and by the condition of the two wrecked vehicles. Her testimony of the position of the bus at the time of impact was strengthened by the location of the debris, the course of the black brake-marks, the fact that the right front of each vehicle was the point of collision, and in that the bus was found off the left side of the highway. The testimony of the appellee was in harmony with the physical facts, consistent with the undisputed facts, and reasonable. Pullman Co. v. Griffith, 5 Cir., 109 F.2d 612, Jan., 1940; Faulkner v. Middleton, Miss., 190 So. 910; Goodyear Yellow Pine Co. v. Anderson, 171 Miss. 530, 157 So. 700; Cox v. Tucker, 133 Miss. 378, 97 So. 721; 5 Corpus Juris Secundum, Appeal and Error, § 1648.

The contention that the verdict is excessive is a matter exclusively within the discretion of the trial court, which this court lacks jurisdiction to review. Swift & Co. v. Ellinor, 5 Cir., 101 F.2d 131; Atlantic Greyhound Corp. v. Crenshaw, 5 Cir., 99 F.2d 449; Kansas City Southern Ry. Co. v. Pinson, 5 Cir., 61 F.2d 1001; Southern Ry. Co. v. Montgomery, 5 Cir., 46 F.2d 990; Louisiana Oil Refining Co. v. Reed, 5 Cir., 38 F.2d 159.

Finally, it is urged that the lower court erred in denying motions for a new trial sought on the ground of after-discovered evidence. Some several weeks after judgment was entered in this case, two attorneys of counsel for the appellant observed the appellee when she was a witness in a law suit. They made affidavits stating that she appeared to be entirely well; that they did not notice any impairment of sight, hearing, or movement; that she seemed cheerful, alert, and composed; and that, from her appearance, she gave no evidence of suffering any pain or disability or of ever having been in a wreck. The evidence adduced at the trial on the question of

damages consisted of the testimony of a nurse, two physicians, and a household companion. This testimony revealed painful and permanent injuries that involved her sight, hearing, and motivation. No adverse proof was offered by appellant.

Three other witnesses, claimed to be undiscovered until after the trial, were offered. The testimony of one involved a repetition of testimony adduced at the trial, and the other two had been witnesses for the bus company in a former trial arising out of the identical collision. They were present in court during the trial of this case, but did not testify.

A motion for a new trial is addressed to the sound discretion of the trial court. A ruling thereon cannot be disturbed by an appellate court unless it constitutes a manifest abuse of discretion. Metropolitan Life Ins. Co. v. Banion, 10 Cir., 106 F.2d 561; Zahn v. Hudspeth, 10 Cir., 102 F.2d 759; Streckfus Steamers v. Shuttleworth, 4 Cir., 86 F.2d 327; National Box Co. v. Wroten, 5 Cir., 66 F.2d 86. The trial court acted within its discretion in refusing to accept the opinions of appellant's attorneys concerning the nature and effect of the injuries sustained, which were formed from a belated and remote observation and were in contradiction of the conclusions reached by competent physicians after detailed examinations and repeated treatments. The appellant had its day in court, and, during the original trial, it was privileged to probe the extent of appellee's injuries; but the court did not abuse its discretion in refusing a new trial where the after-discovered evidence offered was merely cumulative, or was of a character which could have been presented at the trial by the exercise of reasonable diligence. Cf. Roach v. Stastny, 7 Cir., 104 F. 2d 559; Irvin v. Buick Motor Co., 8 Cir., 88 F.2d 947; Westwood v. Continental Can Co., 5 Cir., 80 F.2d 494; Mutual Life Ins. Co. of New York v. Treadwell, 5 Cir., 79 F.2d 487.

Conceding, without deciding, that under rule 35 of the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the district court was empowered, upon motion for a new trial, to require appellee to submit to a mental and physical examination by a physician, upon the facts in this case we think the trial court acted within its discretion in denying the request therefor. This was the third motion for a new trial which had been presented by appellant and ruled upon by the court within a period of three months after the trial. The record shows that these three motions were successively heard and decided by the court. Because the court denied the request for a mental and physical examination, which was a matter within its sound discretion, it does not follow that it did not fully hear this motion for a new trial.

Affirmed.

SIBLEY, Circuit Judge (dissenting).

The trial judge correctly let the case go to the jury. But I think he erred grievously in *not fully hearing* that ground of the motion for new trial which set up that appellee had apparently recovered from the injuries which a few weeks before had been presented to the jury as totally and permanently disabling her. The motion prayed that the court have her physically examined at movant's expense as the means of ascertaining her condition. The affidavits of the attorneys were the ground for asking the examination. Under the circumstances of this case the examination ought to have been ordered. It would provide the best and the final evidence of the fact presented as a probability by the affidavits —that appellee was not permanently injured. The matter stood much as if there was a conclusive document in the hands of the opposite party the existence of which was newly discovered, and which the court was asked to order produced. The refusal of the court to get and consider the evidence is not to exercise discretion in the grant or refusal of a new trial, but is a failure fully to hear the motion, and is plain error. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917.

The plaintiff sued for total and permanent injuries to her sight, hearing, bodily powers, and mind. Both her physicians testified positively she was so injured, with reservations only as to mental improvement. Her actions and appearance at the trial corroborated them. No one contended otherwise. The jury accepted that view of the injuries and gave her a verdict for $25,000. In overruling the general motion for a new trial the judge said in substance that the verdict was larger than he would have given, but he could not put his judgment against that of the jury. Now before the time for appeal expired and within the time fixed by Rule of Civil Procedure 59(b), 28 U.S.C.A. following section 723c, this motion based on newly discovered

582

evidence was made. Two attorneys had just seen appellee for the first time since the verdict as she testified for an hour or more in another case growing out of the same accident. Each makes affidavit that her sight and hearing had become all right, she walked without a limp, and "from her mental and physical appearance one would never know that she had been in a wreck, and she gave no evidence that affiant could detect of any pain or suffering or any disability." No counter-showing at all was made. This showing must be taken to be true. But the motion did not rest on the affidavits, but specially prayed that appellee be brought into court and physically examined by two or three competent physicians, at movant's expense. Rule of Civil Procedure 35 provides for such a physical examination, and does not limit it to the purposes of the main trial. It can be had whenever it is important to ascertain the truth. In ignoring this prayer the judge erroneously refused to hear the most convincing evidence. Of course a new trial is not to be granted whenever a plaintiff gets better after verdict—they generally do. But where a large verdict is plainly based on total and permanent disability, and within a few weeks the sufferer seems to be well, the suggestion of mistake, if not imposition, is too strong for a court still having control of the verdict to ignore it. Even without the requested examination, the uncontradicted showing required that justice have another opportunity. Anshutz v. Louisville Ry. Co., 152 Ky. 741, 154 S.W. 13, 45 L.R.A.,N.S., 87, is a striking precedent. See also Louisville & N. Ry. Co. v. Whitley, 100 Ky. 413, 38 S.W. 678.